IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL M. NIGRO, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, and CENTER CITY DISTRICT, | : | No. 10-987 |
| | : | |
| Defendants. | : | |

Norma L. Shapiro, J.                                                                                                                                   August 25, 2010

**MEMORANDUM**

Before the court is a Motion to Remand by Plaintiff Russell M. Nigro. For the following reasons, the Motion is granted and the case is remanded to the Pennsylvania Court of Common Pleas for Philadelphia County.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The Center City District ("CCD") is a neighborhood improvement district ("NID") authorized by the Community and Economic Improvement Act, 53 P.S. § 18101 *et seq.* The Act grants municipalities, e.g., the City of Philadelphia, the authority to create one or more NIDs and to establish a managing authority to administer the NID. *See* 53 P.S. §§ 18104, 18105. The Pennsylvania legislature made the following findings supporting the creation of NIDs:

> (1) Existing tax rates in many municipalities are at or near their statutory cap.
>
> (2) The General Fund revenue derived from these taxes many times is not sufficient to provide adequate municipal services or additional services needed in specific geographic areas within the municipality, including, but not limited to, downtown commercial districts.
>
> (3) As a result, municipalities should be encouraged to create, where feasible and desired, assessment-based neighborhood improvement districts which would include, but not be limited to, downtown commercial districts. . . .

53 P.S. § 18102. The Act delegates to a managing authority, upon approval by the governing body of the municipality, the power to assess property owners within the NID a special charge to support improvements and services. *See* 53 P.S. § 18107.[1]

The CCD is governed by an authority with powers defined by the Community and Economic Improvement Act and the Municipality Authorities Act of 1945, 53 Pa. C.S. § 5601, *et seq*. The District was created by Philadelphia City Council through the enactment of Philadelphia, Pa., Ordinance 727 (Mar. 28, 1990). The CCD was incorporated under the laws of Pennsylvania and, in November 1990, City Council approved the CCD's first plan and budget. Philadelphia, Pa., Ordinance 1069 (Nov. 2, 1990) (approving the CCD plan, estimated costs and proposed method for charges). The CCD was created as "a body corporate and politic," and the City retains the right to approve any plan of the CCD. *See* Ordinance 727, § 5.

The stated goal of the CCD is "to create a safer, cleaner, well-managed Center City so that Philadelphia can successfully compete as an environment in which to live, do business, shop and visit." Ordinance 1069, § 6. The CCD, a privately-directed municipal authority, seeks to accomplish its goal by "provid[ing] security and cleaning services that will supplement basic services already provided by the City of Philadelphia," and by "support[ing] marketing and promotional initiatives designed to enhance the image of our expanding downtown." *Id.*

The CCD primarily funds its activities by levying assessments on property owners. The assessment is imposed upon all taxable properties within the District, including: fully taxable properties; the taxable portion of exempt properties; and the taxable portion of abated properties. Ordinance 1069, Ex. A, "Proposed Method of Assessment." An individual

---

[1] The Community and Economic Improvement Act offers an NID managing authority several options to adjust the burden of a special property assessment fee on certain property owners within the district. For example,
> [i]n the case of an NID which contains a combination of business, residential, industrial and/or institutional areas and uses [like the Center City District], a weighted assessment may be instituted. In such case, the fee levied on property owners generally may be weighted higher for business, industrial or institutional properties than that levied on residential property owners, provided the basis for the calculation of the fee meets the rational nexus test.

53 P.S. § 18107(b)(4).

assessment is determined by: (1) the ratio of the assessed value of an individual property to the total taxable assessed value of all properties in the District, times; (2) the total annual amount of assessments billed.  *See* Ordinance 1069; 53 Pa. C.S. § 5607(d)(27)(i)(A).  On average, the CCD receives seventy-three percent (73%) of its income from mandatory assessments.  Philadelphia, Pa., Ordinance 70998, Ex. A (Dec. 13, 2007). Prior to September 2005, "owner-occupants" of residential properties could opt out of the annual assessment through the Homeowners Contribution Fund.  This option is no longer available.

The CCD also receives funds from other sources, including: voluntary payments from tax-exempt property owners; proceeds of bonds backed by District revenues; interest income; and charges for district operations, such as sidewalk and concourse cleaning, landscape maintenance, and graffiti removal services in adjacent residential and commercial areas.  *See* Ordinance 1069, Ex. A*; see also* Ordinance 70998, Ex. A.

Claims to secure the payment of assessments are entered in the prothonotary's office as liens on property in the same manner as municipal claims.  53 Pa.C.S. § 5607(d)(27)(v).  The City is authorized to enter into cooperative agreements with the CCD for the purpose of taking legal action to collect unpaid CCD assessments and charges. Ordinance 1069, § 4.

Plaintiff, in an action against the City and the CCD in the Court of Common Pleas of Philadelphia County, alleged that the assessment scheme is unlawful because it is not imposed uniformly on property owners, in violation of the uniformity clause of the Pennsylvania Constitution, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the CCD's enabling legislation.  Plaintiff asserts that because Philadelphia condominium property owners immediately outside the CCD do not pay the assessments but receive similar services, and some property owners within the CCD do not pay the assessments but receive CCD services, the assessments are not imposed uniformly.  Defendants removed based on federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.

Plaintiff, moving to remand the action to the Court of Common Pleas (paper no. 10), argues this court is prohibited from exercising jurisdiction over the matter under the Tax

3

Injunction Act, because the assessment is a tax within the meaning of the Act. CCD opposes remand (paper no. 13) on the ground that this assessment does not constitute a tax. The City of Philadelphia adopted the arguments and conclusions offered by the CCD, by letter dated April 26, 2010 (paper no. 14). At oral argument on June 8, 2010, the court ordered the parties to brief their arguments in light of the Supreme Court's recent decision in *Levin v. Commerce Energy, Inc.*, No. 09-223, 560 U.S. \_\_\_ (June 1, 2010).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action. The defendants bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

If an action is removed, a plaintiff may challenge removal by moving to remand the case to state court. Remand to state court is appropriate for: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). It is always the removing party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *see also Boyer*, 913 F.2d at 111 (removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand.").

## III. DISCUSSION

Defendants removed this case based on federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. Plaintiff denies that the court has subject matter jurisdiction over the removed complaint under the Tax Injunction Act, 28 U.S.C. § 1341 and comity.

Federal courts are courts of limited jurisdiction, and must act only within that jurisdiction. The Tax Injunction Act ("TIA") acts to circumscribe the exercise of lower federal court adjudicatory power. It provides that a "district court shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient

4

remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purpose of the TIA is to promote comity and to preclude unnecessary judicial interference in state revenue raising operations. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981); *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374-76 (3d Cir. 1978). Courts have read the TIA broadly, and "although the plain language of the Act prohibits only injunctions, the Supreme Court has held that the Act also prohibits a federal court from issuing declaratory judgments." *Behe v. Chester County Bd. of Assessment Appeals*, 952 F.2d 66, 68 (3d Cir. 1991); *see California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). The TIA applies to local taxes as well as state taxes. *See, e.g., Rosewell*, 450 U.S. at 522. The trial court must resolve two questions: (1) whether the suit seeks to invalidate a "tax under state law"; and (2) if so, whether the state courts offer the plaintiffs a "plain, speedy and efficient remedy." *See* 28 U.S.C. § 1341.

1. *Tax Under State Law*

Whether the state or local law is a tax is guided by "federal law ... rather than ... state tax labels." *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir. 1978). Our Court of Appeals has held that the term "tax" should be interpreted broadly for purposes of determining federal jurisdiction. *See Non-Resident Taxpayers Ass'n v. Philadelphia*, 478 F.2d 456, 458-59 (3d Cir. 1973); *see also Behe*, 952 F.2d at 68 ("the Supreme Court has expanded the scope of the Act to exclude virtually all challenges to state and local taxation from the federal courts").

Federal law distinguishes broad-based taxes that sustain the flow of revenue to state (or local) government from fees connected to a regulatory scheme. *See Robinson Protective Alarm Co.*, 581 F.2d at 376; *see also Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997); *Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996); *Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925 (9th Cir. 1996); *San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683 (1st Cir. 1992). Taxes fall within the scope of the Tax Injunction Act, but regulatory fees do not. A tax is generally a revenue-raising measure, imposed by a legislative body, that allocates revenue "to a general fund, and is spent for the benefit of the entire community." *San Juan Cellular*, 967 F.2d at 685; *see also Robinson Protective Alarm Co.*, 581 F.2d at 376. A fee, by contrast, is a "payment[] given in return for a government-provided benefit" and is tied in some fashion to the payor's

5

use of the service. *United States v. City of Huntington*, 999 F.2d 71, 74 (4th Cir. 1993). A special assessment on property is a tax under the TIA. *Burris v. Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991); *Tramel v. Schrader*, 505 F.2d 1310, 1315-16 (5th Cir. 1975); *Trading Co. of N. Am., Inc. v. Bristol Twp. Auth.*, 47 F. Supp. 2d 563, 570 (E.D. Pa. 1999).

Distinguishing one from the other requires careful analysis because the line between "tax" and "fee" can be unclear:

> [Courts] have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contribute[s] to a general fund, and [is] spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation related expenses.

*San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir. 1992) (citations omitted).

Courts considering the issue have distilled three factors helpful in determining whether an assessment is a tax or a fee: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. *San Juan Cellular*, 967 F.2d at 686-87; *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000); *American Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management Dist.*, 166 F.3d 835, 837 (6th Cir. 1999); *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1011 (5th Cir. 1998); *Hager*, 84 F.3d at 870; *Bidart Bros.*, 73 F.3d at 931.

        a.     *Who Imposes, Administers and Collects the Assessment?*

An assessment imposed directly by a legislature is more likely to be a tax than one imposed by an administrative agency. *Cumberland Farms*, 116 F.3d at 946 (tax); *Bidart Bros.*, 73 F.3d at 931 (fee); *San Juan Cellular*, 967 F.2d at 686 (fee); *Trading Co.*, 47 F. Supp. 2d at 568 (tax). If responsibility for administering and collecting the assessment lies with the general tax assessor,

6

it is more likely a tax; if this responsibility lies with a regulatory agency, it is more likely a fee. *Cumberland Farms*, 116 F.3d at 946.

Neither the legislature nor a regulatory body imposes the CCD assessment. The CCD, created by City Council under state statutory authority, does not stand in place of the municipality. Neither is the CCD a regulatory body. The CCD conducts all billing and collection of the assessment, although it may turn to the City Law Department for assistance in collecting delinquent payments. This factor is inconclusive.

b. *Upon Whom Is the Assessment Imposed?*

If an assessment is imposed upon a broad group of individuals, it is more likely to be a tax than a fee. *See Trading Co.*, 47 F. Supp. 2d at 568-69. "[T]he classic tax is imposed upon many, or all, citizens." *San Juan Cellular Tel. Co.*, 967 F.2d at 685; *see also, e.g., Trailer Marine Transport Corp. v. Vazquez*, 977 F.2d 1, 6 (1st Cir. 1992) (fee at issue not a tax because, among other things, it was collected only from a narrow class of persons who sought the "privilege" of driving on state highways); *see also Bidart Bros.*, 73 F.3d at 932-33 (assessment imposed on apple producers was a fee because it was imposed upon a narrow group of organizations).

This assessment is charged on all taxable properties in the District. No distinction is made between commercial properties and residential properties. Defendants argue that property owners in the District comprise only one percent (1%) of all property owners in the City and, consequently, the CCD assessment is akin to a special assessment that should be treated as a fee.

The CCD assessment is a compulsory levy based upon a resident's status as a property owner and not his or her use of services. The assessment is not tied to obtaining a particular privilege from the CCD; all properties in the District benefit from the CCD's undertakings whether or not they contribute. If defendants' argument that the CCD assessment is akin to a special assessment is credited, there is no question the CCD assessment is a tax. *See Trading Co.*, 47 F. Supp. 2d at 568 (sewer assessment is a tax). This factor suggests the assessment is a tax.

7

### c. *What Is the Ultimate Purpose and Use of the Assessment Funds?*

The core inquiry in this circuit centers on the purpose and ultimate use of the assessment. *See Robinson Protective Alarm Co.*, 581 F.2d at 376; *United Wire, Health and Welfare Fund v. Morristown*, 793 F. Supp. 524, 530 (D.N.J. 1992) (ultimate use of the money is an important consideration), *aff'd in part, rev'd in part on other grounds*, 995 F.2d 1179 (3d Cir. 1993). If the revenue is paid into a municipality's general fund and provides a general benefit to the public, it resembles a tax. If the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it resembles a fee. *See Robinson Protective Alarm Co.*, 581 F.2d at 376 (ordinance was "a revenue raising measure . . . added to the public fisc, rather than applied exclusively to contractual services owed central alarm station companies"); *see also Cumberland Farms*, 116 F.3d at 947. "Rather than a question solely of where the money goes, the issue is why the money is taken." *Hager*, 84 F.3d at 870-71; *see also Bidart Bros.*, 73 F.3d at 932-33; *San Juan Cellular*, 967 F.2d at 686.

In *Kreider v. County of Lancaster*, No. 99-1896, 1999 U.S. Dist. LEXIS 18927 (E.D. Pa. Dec. 8, 1999), three married couples who were adoptive parents challenged the validity of Pennsylvania's adoption counseling filing fee under the Takings and Equal Protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The fee, paid into a segregated county fund, was used to provide biological parents with counseling concerning relinquishment of parental rights if they could not otherwise afford it. The determinative factor is not whether funds are placed into a separate account. Segregation is *suggestive* of a fee, but the dispositive question is for what purpose the funds are used. The *Kreider* court observed that the fee, assessed on a narrow group of individuals, was used for the benefit of a similarly narrow group of individuals.

Revenue from the CCD assessment is held separately by CCD, and does not become part of the City's general fund. This suggests the assessment is a fee but it is not determinative, because "even assessments that are segregated from general revenues are 'taxes' under the [TIA] if expended to provide a 'general benefit' to the public." *See Bidart*, 73 F.3d at 932; *San Juan Cellular*, 967 F.2d at 685; *accord Trading Co.*, 47 F. Supp. 2d at 569 (charge held in a separate fund

was a tax because "the charges assessed ultimately are for the public benefit even if the funds are segregated").

The CCD principally provides traditional municipal services of cleaning, maintaining and patrolling city streets, on a supplemental basis; these services are "public" within the boundaries of the District. The City Council concluded that creating the CCD would be "desirable *for the entire City of Philadelphia* to preserve and improve the economic vitality of the central business district." Ordinance 727, § 2 (emphasis added). In approving the plan and assessment method of the CCD, the City Council ordinance stated:

> The goal of the [CCD] is to create a safer, cleaner, well-managed Center-City so that Philadelphia can successfully compete as an environment in which to live, do business, shop and visit. To achieve this goal, a privately-directed municipal authority has been established to provide security and cleaning services that will supplement basic services already provided by the City of Philadelphia. To stimulate tourism, commercial, retail and cultural activities, the [CCD] will also support marketing and promotional initiatives designed to enhance the image of our expanding downtown.

Ordinance 1069, § 6.

Considering the factors identified as most relevant, this assessment is a tax. To rule on the merits of this case, the court would have to rule on the constitutionality of the revenue collection practices of a state-created entity directly assessing charges on a broad class (all taxable property in the District) for the benefit of taxable and exempt property owners, residents, workers and tourists, among others. It is clear that the charges assessed ultimately are for the public benefit; the enabling ordinance clearly expresses the City's desire to focus additional funds and services on the central business district for the benefit of the entire City. The CCD assessment is a tax within the meaning of the Tax Injunction Act.

### 2. *Plain, Speedy and Efficient Remedy*

Before remanding this action, this court must also determine whether plaintiff has a plain, speedy and efficient remedy in state court. "For a state remedy to be adequate, it must satisfy certain procedural criteria." *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 (3d Cir. 1989); *see also*

9

*Rosewell*, 450 U.S. at 522. "[A] state remedy will be sufficient if it provides the taxpayer with a full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections." *Hardwick*, 891 F.2d at 1105. Substantive concerns cannot enter into the court's consideration of state remedies. *See Rosewell*, 450 U.S. at 515. "The State remedy need not be the best or most convenient one." *Behe*, 952 F.2d at 68.

There is a remedy for the constitutional harms allegedly suffered by the plaintiff. The Municipal Authorities Act provides that

> Any person questioning the reasonableness or uniformity of any rate fixed by any Authority . . . may bring suit against the Authority in the court of common pleas of the county wherein the project is located. . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service . . .

53 Pa.C.S. § 5607(d)(9). Pennsylvania courts have concluded that recourse to the court of common pleas is the exclusive statutory remedy for challenging an Authority's rates or fees. *See Calabrese v. Collier Township Municipal Authority*, 240 A. 2d 544, 548 (Pa. 1968) (exclusive jurisdiction to determine questions involving the reasonableness of rates charged by a municipal Authority is vested in the court of common pleas); *see also, e.g., Wivagg v. Downtown McKeesport Business District Authority*, 503 A.2d 1112, 1114 (Pa. Commw. Ct. 1986).

Plaintiff brought this action on behalf of a putative class; defendants argue that a class action would not be available to plaintiff in the state court forum and, therefore, plaintiff does not have a plain, speedy and efficient remedy. In most circumstances Pennsylvania courts are divested of equity jurisdiction (permitting class actions) where a legal remedy exists. *See DeLuca v. Buckeye Coal Co.*, 345 A.2d 637, 640 (Pa. 1975); *Calabrese*, 240 A.2d at 548. But where the legal remedy cannot afford "full, perfect and complete" relief, "equity extends its jurisdiction in furtherance of justice." *Pennsylvania State Chamber of Commerce v. Torquato*, 125 A.2d 755, 766 (Pa. 1956). Where a legal remedy would result in a multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, the Pennsylvania Supreme Court has found the legal remedy inadequate. *See Schrader v. Heath*, 182 A.2d 696, 698 (Pa. 1962);

*accord Pentlong Corp. v. GLS Capital, Inc.*, 820 A.2d 1240, 1246 (Pa. 2003).  Consequently, the class procedure may be available to plaintiff in state court.

Even if the class action requested in his complaint is not available to plaintiff, the state court can provide a plain, speedy and effective remedy.  The state need not provide the best or most convenient remedy. *Behe*, 952 F.2d at 68. Taxpayers may bring suits in Pennsylvania state courts alleging violations of both the Pennsylvania Constitution and the United States Constitution. *See Behe*, 952 F.2d at 69 (citing cases so holding); *see also Balazik v. County of Dauphin*, 44 F.3d 209, 218 (3d Cir. 1995) (in context of property assessment challenge raising equal protection claims, that "Pennsylvania provides a 'plain, adequate and complete' remedy for [Section] 1983 plaintiffs challenging state taxation policies").  Even if plaintiff is precluded from asserting his claims on behalf of a class, the state remedy is sufficient.

Having determined that the TIA bars the exercise of federal jurisdiction, the court need not reach the issue of comity.

## IV.   CONCLUSION

The assessment imposed by the CCD is a tax imposed for the purpose of raising revenue, and the plaintiff has an adequate remedy in state court.  The Tax Injunction Act deprives this court of subject matter jurisdiction.  Accordingly, plaintiff's motion to remand will be granted.  An appropriate order follows.